**John VON NEUMANN,
Plaintiff-Appellant,**

v.

**UNITED STATES of America; Secretary of the Treasury; Commissioner of Customs; and District Director of Customs for the Port of Seattle, District 30.01, Defendants-Appellees.**

**No. 79–3761.**

United States Court of Appeals,
Ninth Circuit.

March 30, 1984.

Richard V. Sandler, Sandler & Rosen, Los Angeles, Cal., for plaintiff-appellant.

Stephen D. Petersen, Howard D. Gest, Asst. U.S. Attys., Los Angeles, Cal., ar-

gued, for defendants-appellees; Andrea Sheridan Ordin, U.S. Atty., Los Angeles, Cal., on brief.

Before TANG and BOOCHEVER, Circuit Judges, and PRICE,* District Judge.

BOOCHEVER, Circuit Judge.

This case was remanded by the United States Supreme Court for further consideration in light of *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* —— U.S. ——, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (hereinafter referred to as *$8,850*). The issue on remand is whether the United States Bureau of Customs (Customs) violated due process in handling an administrative petition for remission or mitigation of the forfeiture of an automobile seized at the border. In our earlier decision, we held that Customs violated John von Neumann's due process rights by failing to process von Neumann's petition for over a month after the petition was filed. *See Von Neumann v. United States,* 660 F.2d 1319, 1326 (9th Cir.1981). After reconsideration in light of *$8,850*, we reaffirm our earlier conclusion that due process rights attach to the processing of a petition for remission. We remand to the district court, however, for determination of whether the delay violated von Neumann's due process rights.

FACTS

Our earlier decision fully explored the events surrounding the seizure of von Neumann's 1974 Jaguar Panther automobile at the United States border checkpoint of Blaine, Washington on January 20, 1974. *See* 660 F.2d at 1321–22. In brief, von Neumann shipped the automobile from Switzerland, where he had purchased it, to Vancouver, Canada, where he obtained a release from Canadian authorities to transport the automobile to the United States. At the Blaine checkpoint, von Neumann failed to declare the automobile and Customs seized the vehicle pursuant to 19 U.S.C. § 1497 (1976).[1]

Immediately after the car was seized, von Neumann prepared a "Petition for Remission or Mitigation of Forfeiture and Penalties Incurred" pursuant to 19 U.S.C. § 1618 (1976),[2] in which he stated that he had intended to deliver the Canadian release papers to Canadian Customs, but had mistakenly arrived at the United States Customs instead. On February 3, von Neumann posted a cash bond of $24,500 to secure release of the vehicle. Customs acted on the petition on February 25, and informed von Neumann that the penalty for failing to declare the car was reduced to $3,600. The Regional Commissioner of Customs subsequently upheld this determination on April 14. On remand, von Neu-

---

* Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

1. 19 U.S.C. § 1497 (1976) provides:

   Any article not included in the declaration and entry as made, and, before examination of the baggage was begun, not mentioned in writing by such person, if written declaration and entry was required, or orally if written declaration and entry was not required, shall be subject to forfeiture and such person shall be liable to a penalty equal to the value of such article.

2. 19 U.S.C. § 1618 (1976) provides in part:

   Whenever any person interested in any vessel, vehicle, merchandise, or baggage seized under the provisions of this chapter, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury under the customs laws or under the navigation laws, before the sale of such vessel, vehicle, merchandise, or baggage a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, if he finds that such a fine, penalty, or forfeiture was incurred *without willful negligence or without* any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto.

mann argues that the delay by Customs in acting on his petition from January 20 to February 25 constituted a denial of due process.[3]

## DISCUSSION

### I.

### Due Process Right to a Prompt Determination of the Petition

In our original decision on this appeal, we held that "due process requires the Customs Bureau to act promptly in ruling on petitions for remission or mitigation under 19 U.S.C. § 1618." 660 F.2d at 1326. Subsequent to our decision, the United States Supreme Court rendered its decision in *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* —— U.S. ——, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), which prompted this remand. We therefore reexamine our earlier holding in light of *$8,850.*

In *$8,850,* claimant Mary Vasquez failed to declare to Customs on September 10, 1975, that she was transporting monetary instruments exceeding $5,000 into the United States, in violation of section 231 of the Bank Secrecy Act of 1970, 31 U.S.C. § 1101 (1976). Customs subsequently discovered $8,850 in currency in Ms. Vasquez's possession, and seized it from her pursuant to 31 U.S.C. § 1102 (1976). A week later, Vasquez filed a petition for remission or mitigation. Throughout the remainder of 1975 and until May 1976, the Customs Office of Investigation conducted an investigation to determine whether the seized currency was part of a narcotics transaction. In May

1976, Customs referred the case to the United States Attorney, recommending that Vasquez be prosecuted for the reporting violation. During the ensuing criminal prosecution, Customs withheld determination of the petition for remission because the currency was needed as evidence at the criminal trial. Vasquez was convicted of the criminal violation on December 24, 1976.[4] On March 10, 1977, Customs denied the petition for remission, and referred the claim of forfeiture to the United States Attorney.

On appeal before the Supreme Court, Vasquez argued that the Government's dilatory processing of the petition and 18-month delay in filing the judicial forfeiture action violated due process. The Government countered that there was no general due process requirement of prompt post-seizure filing of a judicial forfeiture action; only a deliberate delay by the Government in order to gain an unfair tactical advantage, or a reckless disregard by the Government of the prejudicial impact of delay on the defendant, could justify dismissal of the forfeiture action. The Court found, however, that due process required a prompt filing of the forfeiture petition. —— U.S. at ——, 103 S.Ct. at 2011. The Court adopted a four-part balancing test in order to determine whether the delay between the seizure and the filing of a judicial forfeiture action under 31 U.S.C. § 1102 violated the claimant's due process rights. *Id.*

*$8,850* presented a somewhat different issue from that arising in the instant case.[5] A claimant may have a more compelling

---

3. The Supreme Court decision in *$8,850* does not disturb our earlier decision upholding the initial seizure of the vehicle under 19 U.S.C. § 1497. We therefore affirm the district court's determination that von Neumann violated section 1497 and that seizure of the vehicle was proper.

4. The conviction subsequently was reversed because the court files were left in the jury room during deliberations. *United States v. Vasquez,* 597 F.2d 192 (9th Cir.1979).

5. The Bank Secrecy Act, at issue in *$8,850,* contains its own remission provision. *See* 31 U.S.C. § 1104 (1976). Von Neumann's petition, by

contrast, was filed under 19 U.S.C. § 1618 (1976). Claimant Vasquez, in *$8,850,* argued that the Government's dilatory processing of her petititon for remission and the dilatory commencement of a civil forfeiture action violated her right of due process. —— U.S. at ——, 103 S.Ct. at 2010. Both the Court of Appeals and the Supreme Court, however, focused only on whether the delay in filing the forfeiture action violated due process. *See $8,850,* —— U.S. at ——, 103 S.Ct. at 2010–11; 645 F.2d 836, 838 (9th Cir.1981). Neither court directly addressed the issue we reach here, the due process requirement of prompt processing of the petition for remission.

constitutional claim to a prompt review of the forfeiture by an independent judicial officer than he has to an administrative review of the forfeiture by Customs itself. Further, the substantive disposition of remission petitions is committed to Customs' discretion, and we will not review the merits of a claimant's petition. *United States v. One 1972 Mercedes-Benz 250*, 545 F.2d 1233, 1236 (9th Cir.1976). *$8,850*, therefore, does not necessarily impel the conclusion that due process requires a prompt determination of a petition for remission or mitigation under 19 U.S.C. § 1618.

■ Nevertheless, the Supreme Court's holding in *$8,850* reinforces our earlier view that due process rights attach to the processing of the petition for remission. As we observed in our earlier decision in this case:

> [f]rom the standpoint of the claimant, the stage of the procedures at which excessive delay occurs is irrelevant. His concern, and the concern of the statutory scheme, is the quick and efficient determination of the property rights in the confiscated vehicle.

660 F.2d at 1326, *quoting United States v. One 1970 Ford Pickup*, 564 F.2d 864, 866 (9th Cir.1977). We find nothing in *$8,850* to disturb this conclusion. Consequently, we reaffirm our holding that due process requires Customs to act promptly in ruling on petitions for remission or mitigation under 19 U.S.C. § 1618.

## II.

### Application of Due Process Standards to the Processing of Von Neumann's Petition

In our earlier decision, we noted that neither judicial decisions nor administrative

regulations had established standards for prompt action in the administrative consideration of a petition for remission. *See* 660 F.2d at 1326. This absence of standards prompted the court to establish guidelines to ensure the due process rights of administrative claimants. *Id.* Specifically, we held that in cases involving vehicles of transportation, the district director should, whenever feasible, act on a petition for remission or mitigation within 24 hours of receipt. 660 F.2d at 1327.

■ Upon reconsideration in light of *$8,850*, however, we are persuaded that our attempt to set specific time frames for the processing of administrative petitions was ill-advised. Instead, we are guided by the Supreme Court's teaching in *$8,850*, that "due process is flexible and calls for such procedural protections as the particular situation demands." —— U.S. at ——, 103 S.Ct. at 2012, *quoting Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Due process inquiries necessarily must proceed on an ad hoc basis, and the outcome will depend on the facts of the particular case.

The analysis employed by the Supreme Court in *$8,850* provides an appropriate framework for determining whether the delay here violated von Neumann's due process rights. To determine whether government delay had abridged due process, the *$8,850* Court examined four factors: the length of the delay, the reason for the delay, the defendant's assertion of his rights, and prejudice to the defendant occasioned by the delay.[6] —— U.S. at ——, 103 S.Ct. at 2011–12. *See also Barker v. Win-*

---

Although the Court did not directly discuss whether a delay in the processing of a petition for remission might violate due process, it does offer some guidance on the issue. The Court stated that an important justification for delay "is to see whether the Secretary's decision on the petition for remission will obviate the need for judicial proceedings." *$8,850*, —— U.S. at ——, 103 S.Ct. at 2013. It further emphasized that delay in the processing of a petition can favor both claimant and Government. *Id.* We understand the thrust of the Supreme Court's

opinion to be that delay can benefit a claimant, rather than deprive him of due process, by avoiding costly and formal judicial proceedings. *Id.*

6. We find the due process analysis of *$8,850* to be compatible with the balancing approach of *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342 (9th Cir.1977), and *Lee v. Thornton*, 538 F.2d 27, 33 (2d Cir.1976), upon which we relied in our earlier decisions. To determine whether due process had been satis-

*go,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The Court noted that:

> none of these factors is a necessary or sufficient condition for finding unreasonable delay. Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case.

—— U.S. at ——, 103 S.Ct. at 2012.

■ Because the outcome depends heavily on the facts, the balancing of these four factors properly should occur first in the district court. Consequently, we remand to the district court for consideration of whether the due process requirement of fairness has been satisfied here, in light of the *$8,850* test.

Without in any way attempting to foreclose the district court's decision, however, we feel it is appropriate to suggest several factors the court may wish to consider in reaching its determination. As *$8,850* noted, the overarching factor is the length of delay, which acts to some extent as a "triggering mechanism" for due process analysis:

> [W]hen a delay becomes presumptively improper ... necessarily depends on the facts of the particular case.... Obviously short delays—of perhaps a month or so—need less justification than longer delays.

*$8,850* at 4590.[7] To this we would add that the propriety of the delay may turn to a great extent upon the nature of the item that has been seized. We have previously recognized the special hardships imposed on persons deprived of the use of their automobiles:

> A five-day delay in justifying detention of a private vehicle is too long. Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle. *Lee v. Thornton, supra,* 538 F.2d at 33, a case involving seizure and detention of automobiles in comparable circumstances, held that due process required action on a petition for rescission [remission?] or mitigation within 24 hours, and, if the petition was not granted in full, a hearing on probable cause within 72 hours.

*Stypmann v. City & County of San Francisco,* 557 F.2d 1338, 1344 (9th Cir.1977). The potential consequences may be particularly grave when the seizure, as here, leaves a traveler without transportation at a remote border point. *See Lee v. Thornton,* 538 F.2d 27, 31 (2d Cir.1976).

Closely allied to the length of delay is the reason the Government assigns to justify the delay. *$8,850,* —— U.S. at ——, 103 S.Ct. at 2012–13. The record here provides no obvious reason for the Government's one-month delay in processing von Neumann's petition, although we note that Customs processes a great number of petitions each year.[8] It appears that, at the time of

---

fied, *Stypmann* and *Lee* balanced the interest of the government against the interest of the individual. This analysis necessarily required some consideration of the length of the delay, the reason for the delay, the claimant's assertion of his right, and the prejudicial impact of the delay upon the vehicle's owner. In our earlier decision, for example, we noted that Customs might take somewhat longer than 24 hours to process the petition if unusual circumstances so required. 660 F.2d at 1327 n. 16. Nevertheless, we expressly adopt here the due process analysis of *$8,850* in order to make clear the factors that have weight in the balancing process, and to avoid any suggestion that the different terminology of *Lee* and *Stypmann* results in a fundamentally different balancing test.

**7.** The *$8,850* Court found that the Government's 18 month delay in filing the petition for forfei-

ture did not violate due process because the delay was caused by an ongoing criminal investigation and prosecution. —— U.S. at ——, 103 S.Ct. at 2014–15.

**8.** The Customs Service processes over 50,000 noncontraband forfeitures per year. In 90% of all seizures, the claimant files an administrative petition for remission or mitigation. The Secretary grants at least partial relief for an estimated 75% of the petitions. *$8,850,* —— U.S. at ——, 103 S.Ct. at 2009.

The Supreme Court in *$8,850* recognized that delays of a month or so require less explanation than more lengthy delays. That Court, however, did not imply that no explanation at all is required. *Id.* at ——, 103 S.Ct. at 2012–13.

the seizure, Customs may have had all of the facts at hand necessary for an expeditious determination of the petition. Von Neumann had admitted both the origin of the vehicle and his failure to declare the automobile. There is no suggestion that von Neumann or the vehicle might have been involved in illegal activity other than the reporting violation and that Customs delayed processing the petition to allow an investigation as in *$8,850.*[9]

It is also undisputed that von Neumann filed his petition for remission at the time his vehicle was seized, which seems a sufficient assertion of his rights.

The final factor in the analysis is the prejudice to the individual caused by the delay. In addition to possible loss of essential witnesses or evidence, a claimant may also be prejudiced by unanticipated, unrecoverable, expenses resulting from a seizure of his vehicle, sudden disruption of travel plans, inconvenience, or even peril, he thereby experiences. *See, e.g., Stypmann,* 557 F.2d at 1342-43; *Lee,* 538 F.2d at 33.

After weighing these and such other factors the district court considers relevant, the court should determine whether the delay violated due process and enter an appropriate judgment.

CONCLUSION

The district court's finding that von Neumann violated 19 U.S.C. § 1497 by failing to declare his car is not clearly erroneous; therefore the seizure of his car was proper. We remand, however, for determination of whether the delay in processing von Neumann's petition for remission or mitigation violated his due process right to prompt consideration of his claim, in light of the *$8,850* balancing test.

AFFIRMED in part and REMANDED in part.

9. The investigation in *$8,850* required responses from state, federal and Canadian law enforcement officials. The Supreme Court found no evidence that the Government had not pursued

its investigation diligently in *$8,850,* or that delays in the criminal prosecution were caused by the Government. *$8,850* at ——, 103 S.Ct. at 2012-13.